UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND SANTONIO BLAIR,<br><br>Petitioner,<br><br>v.<br><br>JEROME PRICE, Warden,<br><br>Respondent. | No. 2:16-cv-0132 JAM AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition, ECF No. 1, challenges petitioner's 2014 conviction for felony domestic violence offenses. Respondent has answered, ECF No. 21, and petitioner has filed a traverse, ECF No. 23.

## BACKGROUND

### I. Proceedings in the Trial Court

#### A. Preliminary Proceedings

Petitioner was charged in Sacramento County with (1) infliction of corporal injury on a cohabitant, with great bodily injury, (2) battery resulting in serious bodily injury, (3) false imprisonment, and (4) possession of tear gas after being convicted of a felony. CT 108-110.[1] A

---

[1] "CT" refers to the Clerk's Transcript on Appeal, Lodged Doc. 1.

1

1  prior felony conviction was alleged as a strike under the "three-strikes" sentencing law, as well as
2  for other sentencing purposes. Id.

3      Prior to trial, the prosecution moved in limine to introduce copies of petitioner's 2011
4  misdemeanor convictions for battery and criminal threats against the mother of his child, to prove
5  propensity to commit acts of domestic violence as permitted by California Evidence Code section
6  1109. CT 98-100. The defense moved to exclude this evidence. CT 113-121. After hearing, the
7  trial court ruled that the prior convictions were admissible, and could be proved with certified
8  copies of the convictions. 1 RT 22-24.[2] The parties subsequently stipulated defendant had been
9  convicted in 2011 of two misdemeanors—criminal threats and battery—against the mother of his
10 child. CT 136.

11      B. The Evidence Presented at Trial[3]

12      In July 2013, after her work shift ended at about 10:00 or 11:00 p.m., Crystal G. returned
13 to the apartment she shared with petitioner, who was her boyfriend. Petitioner was home at the
14 time. Crystal brought a coworker, Monique S., with her. After dinner, the three talked in the
15 living room. The conversation turned into an argument about the meaning of a Spanish word and
16 petitioner became angry. Crystal told petitioner to calm down, but he started swearing at her.
17 Crystal and petitioner went into a bedroom and argued. Monique heard a "thud" and went to the
18 bedroom to tell Crystal that they should leave. When Crystal crawled out of the bedroom, she
19 was crying and some of her hair extensions were missing. Petitioner grabbed Crystal and pulled
20 her back into the bedroom.

21      When petitioner and Crystal came out of the bedroom, they were yelling, hitting, and
22 pushing each other. Crystal went outside the apartment and the door closed. Monique, who was
23 still inside, asked petitioner to let Crystal leave. The door opened and Crystal started to enter.
24 Petitioner shoved Crystal very hard, causing her to hit her head on the stairs outside. As a result,
25 Crystal suffered a huge gash on her forehead. A lot of blood ran down Crystal's face, onto her

---

[2] "RT" refers to the Reporters Transcript on Appeal, Lodged Docs. 3 & 4.
[3] The following factual summary is taken from the opinion of the California Court of Appeal, Lodged Doc. 8. The undersigned has independently reviewed the trial transcripts and finds this summary to be accurate.

clothes, and on the ground. Monique and Crystal walked toward Monique's car, planning to go to the hospital. Petitioner followed, telling Monique that she could leave but calling Crystal a "bitch" and yelling that she was not "going anywhere." Crystal tried to get into the passenger side of Monique's car, but petitioner grabbed her. Monique left but stopped her car not too far away from the apartment and called 911, reporting what had occurred. Her 911 call was played for the jury.

Just before 5:00 a.m., Citrus Heights Police Officers Wesley Herman and Michael Wells responded to a call reporting an active verbal and physical disturbance at an apartment complex. They heard a man yelling and saw a light in one of the units. Officer Herman looked inside the partially uncovered window and saw petitioner standing in the middle of the bedroom. Petitioner was yelling but Officer Herman could not see anyone else. Both officers heard a sound, possibly that of a body being thrown against the wall. They went to the front door of the apartment and saw a pool of blood on the ground. Dispatch had informed them that someone who had witnessed portions of the incident had called 911. Based on the information received, the officers believed someone's life was in danger and kicked open the front door. They announced their presence and went to the bedroom, where they found petitioner standing at the foot of the bed and Crystal cowering in the corner with a blood-soaked cloth against her head.

Petitioner was arrested. A search of his person revealed a canister of pepper spray in his pants pocket. At the hospital, Crystal received five stitches to close the gash on her forehead.

C. Outcome

The jury returned verdicts of guilty on all four counts. In connection with the inflicting corporal injury charge, the jury found petitioner personally inflicted great bodily injury. In connection with the battery charge, the jury found petitioner personally inflicted serious injury. CT 165-166.

In bifurcated proceedings, petitioner admitted his prior conviction for first degree burglary as a strike, as a prior serious felony conviction, and as the basis for a prior prison term. CT 162. Prior to sentencing, petitioner then moved unsuccessfully to dismiss the strike. CT 249-261 (Romero motion); 2 RT 388 (motion denied). He was sentenced on January 17, 2014, to an

aggregate term of 16 years and four months in prison, including a consecutive one-year, four-month term on the false imprisonment conviction and a concurrent four-year term on the tear gas conviction. CT 300-301; 2 RT 392.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on August 6, 2015. Lodged Doc. 8. Count Four, possession of tear gas by a felon, was remanded for re-sentencing. Id. at 12. The California Supreme Court denied further review on October 14, 2015. Lodged Doc. 10.

During the pendency of his appeal, petitioner filed two petitions for writ of habeas corpus in the Superior Court for Sacramento County and one in the California Court of Appeal for the Third District. Lodged Docs. 12, 14, 16. The Court of Appeal petition was denied summarily on March 13, 2014. Lodged Doc. 17. Both superior court petitions were denied by written order on March 21, 2014. Lodged Docs. 13, 15. A habeas petition was filed in the California Supreme Court on September 1, 2015, and denied on November 18, 2015, with citation to In re Dixon, 41 Cal.2d 756, 759 (1953). Lodged Doc. 19.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 582 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits

4

absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

////

must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 582 U.S. at 102.

## DISCUSSION

I. Claim One: Confrontation Rights Violated by Admission of Certified Copies of Prior Convictions

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner claims that his right to confrontation was violated by the admission of certified copies of his prior domestic violence convictions "without affording petitioner the opportunity for confrontation and cross-examination." ECF No. 1 at 6. The facts supporting the claim are stated as follows:

> Rather than live testimony as propensity evidence under Section 1109 the court admitted certified copies of prior domestic violence (misdemeanor) battery conviction from 2011, that was from a previous dating relationship. Over objection the court authorized use of certified copies as evidence without weighing the similarity between the current & prior offense. The admission was a violation of petitioner's right to confrontation & due process under the United States Constitution Six & Fourteenth Amendments. See Pointer v. Texas, 380 U.S. 400 (1965).

Id.

The admissibility of the prior convictions as propensity evidence was litigated pre-trial. See CT 98-100 (prosecution motion in limine to admit), CT 113-121 (defense motion in limine to exclude). In addition to arguing that the propensity evidence should be excluded altogether (an issue that is not pursued here), the defense argued in the alternative that if it was admitted it should be proved by live witness testimony. CT 120-121. The prosecution argued for proof by certified copies of court records. CT 98. After hearing, the trial court ruled that the prior convictions were admissible, and that they could be proved with certified copies of the convictions. 1 RT 22-24.

B. The Clearly Established Federal Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." The Confrontation Clause prohibits the admission of testimonial out-of-court statements by non-testifying individuals.

6

Crawford v. Washington, 541 U.S. 36 (2004). Not all hearsay implicates the core concerns of the Confrontation Clause; the dispositive question is whether the statement is "testimonial." Id. at 51. A statement is testimonial only when its primary purpose is the development of evidence to support a prosecution. Davis v. Washington, 547 U.S. 813, 822 (2006); Michigan v. Bryant, 562 U.S. 344, 359 (2011). Documents that are created for the specific purpose of litigation, such as forensic laboratory reports, meet this standard. Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). Records kept in the course of business, however, are inherently non-testimonial. Crawford, 541 U.S. at 56.[4] "Business and public records are generally admissible absent confrontation" because "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . they are not testimonial." Melendez-Diaz, 557 U.S. at 324.

### C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The Court of Appeal ruled as follows:

> Defendant first contends the trial court erred in ruling that his prior acts of domestic violence, offered to show propensity under Evidence Code section 1109, could be proven with a certified copy of defendant's misdemeanor domestic violence convictions, rather than live testimony regarding those crimes. He argues that "[t]he court admitted certified copies of his prior convictions without weighing the similarity between the current offense and the prior offense" and thereby "failed to engage in the required analysis of Evidence Code section 352 factors." He also contends "the admission was a violation of [his] right to confrontation and due process under the United States Constitution, Sixth and Fourteenth Amendments." We find no merit in these arguments.
>
> Evidence Code section 1109, subdivision (a)(1) provides that "evidence of the defendant's commission of other domestic violence

---

[4] Petitioner cites Pointer v. Texas, 380 U.S. 400 (1965), which has no applicability to his case. Pointer held that the Confrontation Clause was violated by admission at trial of an absent witness's preliminary hearing testimony, which had not been cross-examined at the preliminary hearing because the defendant had not been provided counsel.

7

is not made inadmissible by section 1101 if the evidence is not inadmissible pursuant to Section 352." In Wesson, the court held that under Evidence Code section 1108 — a parallel statute allowing admission of evidence of other sexual offenses to prove a propensity to commit such offenses — the prior offense or offenses can be proven with court documents, as opposed to live testimony. (People v. Wesson, supra, 138 Cal.App.4th at pp. 967-969.) Defendant claims this case is distinguishable from Wesson because there "the trial court weighed the factual similarity of the prior offense and the current offense" in determining the admissibility of the prior acts under Evidence Code section 352, but here the trial court did not do so. We disagree.

In Wesson, the defendant contended "the jury can only make its determination as to a defendant's propensity to commit the charged offense if the prosecution produces the testimony of witnesses regarding the details of the prior conduct." (People v. Wesson, supra, 138 Cal.App.4th at p. 969.) He asserted that in his case "there were significant differences between the two incidents" because "the prior incident involved forcible oral copulation and sexual battery against a stranger while the charged offenses were forcible sexual penetration and sodomy against his girlfriend." (Ibid.) The appellate court rejected this argument as follows: "First, the trial court considered the issue of similarity in its analysis under section 352. We agree with its conclusion that both the prior and charged offenses involved forcible sexual offenses against adult women, and thus the prior offenses were probative as to defendant's propensity to commit the charged offenses. Second, had defendant wanted to emphasize that the prior offenses were dissimilar because they involved a stranger, he was free to subpoena [the victim of the prior offenses] to present such evidence." (Ibid.)

Although the trial court here did not make an express comparison of defendant's prior offenses to the current offenses on the record, the court did expressly find "the propensity evidence to be relevant" "based on the facts and circumstances of the case." Thus, the trial court weighed the factual similarity of defendant's prior offenses to the charged offenses, just like the trial court did in Wesson. And like the appellate court in Wesson, we agree with the trial court here that defendant's prior offenses were probative of his propensity to commit domestic violence, inasmuch as his prior offenses involved battery and criminal threats against the mother of his child, and the current offenses involved battery and infliction of corporal injury on his live-in girlfriend. Accordingly, use of the certified record of defendant's prior convictions did not prevent the trial court from conducting the analysis required by Evidence Code section 352.

As for defendant's argument that use of the court records violated the confrontation clause, that argument lacks merit because the records sought to be introduced here were not "testimonial." Prior conviction records under Penal Code section 969b are "prepared to document acts and events relating to convictions and imprisonments. Although they may ultimately be used in criminal proceedings, as the documents were here, they are not prepared for the purpose of providing evidence in criminal trials or for determining whether

8

> criminal charges should issue. Therefore, these records are beyond the scope of Crawford [v. Washington (2004) 541 U.S. 36 [124 S. Ct. 1354, 158 L.Ed.2d 177]]." (People v. Taulton (2005) 129 Cal.App.4th 1218, 1225, 29 Cal. Rptr. 3d 203; see People v. Moreno (2011) 192 Cal.App.4th 692, 710-711, 121 Cal. Rptr. 3d 669.)

Lodged Doc. 8 at 5-7.

### D. Objective Reasonableness Under § 2254(d)

The state court did not unreasonably apply Crawford to petitioner's claim. The U.S. Supreme Court has made it perfectly clear that only "testimonial" statements implicate the Confrontation Clause, and documentary evidence of criminal judgments cannot reasonably be considered "testimonial." Indeed, Crawford itself recognized that records kept in the course of business are inherently non-testimonial. Crawford, 541 U.S. at 56. The Ninth Circuit has accordingly held that records of conviction are non-testimonial for purposes of the Confrontation Clause. United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005) (criminal judgments are public records which are not themselves testimonial in nature and do not fall within the prohibition established by the Supreme Court in Crawford), cert. denied, 547 U.S. 1114 (2006).

Because the state court's resolution of the Crawford issue was not unreasonable, federal habeas relief is barred by § 2254(d). To the extent that the California Court of Appeal ruled on state law grounds pursuant to the California Evidence Code, its decision is not reviewable in this court and the claim provides no basis for relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

## II. Claim Two: Due Process Violated by Duplicative Punishment for False Imprisonment

### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner claims that he was unconstitutionally punished twice for the same act by the imposition of a consecutive sentence for false imprisonment. ECF No. 1 at 8. The facts supporting this claim are stated as follows:

> Petitioner['s] due process rights are violated when the court failed to stay the sentence for false imprisonment because the evidence on that count was not shown to have a separate objective from petitioner's conduct underlying the conviction for infliction of corporal injury on a cohabitant. Section 654 applied in this case because petitioner's objective was to prevent [the victim] from leaving not to injure her. The petitioner's actions constituted one indivisible course of

9

> conduct. Section 654 applied to one & three & the court abused its discretion to sentence consecutively.

Id. at 9.

The superior court record reflects that petitioner objected at sentencing to a consecutive sentence on the false imprisonment count, on grounds that the same conduct was punished by the sentence for inflicting corporal injury. 2 RT 387. In finding that the false imprisonment with violence offense was independent of the inflicting corporal injury offense, the trial court stated as follows: "This went beyond a domestic-violence situation, in that there were instances, according to trial testimony, where the victim was trying to leave to go to the hospital to get treatment and help, and the defendant actively prohibited her from doing so." 2 RT 390.

### B. The Clearly Established Federal Law

The decision to impose consecutive sentences for multiple counts rests with the sentencing judge, and specification of the regime for administering multiple sentences is the prerogative of state legislatures. Oregon v. Ice, 555 U.S. 160, 168 (2009). Errors related to the application of state law do not support federal habeas relief. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A state sentencing error violates a defendant's federal constitutional rights, and supports habeas relief, only where the error is "so arbitrary or capricious as to constitute an independent due process violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992).

### C. The State Court's Ruling

The California Court of Appeal ruled as follows:

> Defendant next contends that Penal Code section 654 (section 654) barred his punishment for false imprisonment because his intent and objective in committing this offense was the same as his intent and objective in inflicting corporal injury on Crystal, namely, "to prevent [Crystal] from leaving, not to injure her." According to defendant, "[t]he assault, which resulted in [Crystal] hitting her head on the staircase, was incidental to [his] objective to keep her from leaving." We reject this argument and conclude that sufficient evidence supports the trial court's finding that section 654 did not bar separate punishment.
>
> Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

omission be punished under more than one provision . . . ." "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (Neal v. State of California (1960) 55 Cal.2d 11, 19, 9 Cal. Rptr. 607, 357 P.2d 839; see also People v. Correa (2012) 54 Cal.4th 331, 336, 142 Cal. Rptr. 3d 546, 278 P.3d 809.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (People v. Perez (1979) 23 Cal.3d 545, 551-552, 153 Cal. Rptr. 40, 591 P.2d 63.) The purpose of section 654 is "to insure that a defendant's punishment will be commensurate with his culpability." (Perez, at p. 552.)

"A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (People v. Blake (1998) 68 Cal.App.4th 509, 512, 80 Cal. Rptr. 2d 308.)

Defendant's reliance on People v. Martinez (1980) 109 Cal.App.3d 851, 167 Cal. Rptr. 477 is misplaced. There, the defendant was convicted of assault with intent to commit rape and false imprisonment. After assaulting the victim, the defendant dragged the victim under a bridge where he attempted to rape her. After he stopped trying to rape the victim, the defendant held her for a few moments and tried to convince her not to report the offenses to the police. (Id. at pp. 854, 858.) The Martinez court concluded that the two offenses "involved the same criminal event" and section 654 applied to prohibit punishment for both. (Martinez, at p. 858.) Martinez was criticized in People v. Saffle (1992) 4 Cal.App.4th 434, 5 Cal. Rptr. 2d 648, in which the court held that the trial court did not violate section 654 by imposing separate punishment for sex offenses and false imprisonment, because after the defendant completed the sex offenses, his objective changed to trying to prevent the victim from reporting the crimes. (Saffle, at pp. 438-440.)

Here, substantial evidence supports the trial court's finding that section 654 authorized separate punishment. On the evidence here, the trial court could have reasonably found that defendant's objective in shoving Crystal out the door and into the stairwell was to hurt her, not to keep her from leaving, which was his objective throughout much of the rest of the incident, from when he dragged Crystal back into the bedroom to when he pulled her away from Monique's car. Under these circumstances, the trial court did not err in refusing to stay the sentence for false imprisonment.

Lodged Doc. 8 at 7-9.

### D. Objective Reasonableness Under § 2254(d)

The California Court of Appeal resolved this issue as one of state law, and this court is

bound by its holding on the state law issue.  See, Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Petitioner has identified no clearly established federal law which is inconsistent with the state court's resolution of the claim, and the court is aware of none.  Petitioner's use of the phrase "due process" in conjunction with his state law argument does not create a viable due process claim.  See Park v. California, 202 F.3d 1146, 1154 (9th Cir. 2000) (merely placing a "due process" label on a state law claim does not transform it into a federal claim).

The Ninth Circuit has specifically held that habeas relief is unavailable for an alleged violation of Cal. Penal Code § 654.  Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989).  The Ninth Circuit has also held more generally that "the decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  Accordingly, this claim must be denied.

    III.    Claim Three: Trial Court's Denial of *Romero* Motion Violated Federal Rights

        A.  Petitioner's Allegations and Pertinent State Court Record

Petitioner claims that the trial court's denial of his Romero motion[5] constituted a "Blakely violation" and resulted in "cruel & unusual punishment."  The supporting facts are stated as follows:

> The court abused its discretion in the instant case, petitioner filed a motion to dismiss a prior strike for first degree burglary. . . .  The current offense was not severe & was accounted for by the imposition of the base term & great bodily injury enhancement.  Petitioner's current offense resulted in the "victim" cutting her head on an outdoor staircase unintentionally!  Had the court properly exercised its discretion under section 1385 & stricken the strike prior petitioner would have received a 12 year 8 month sentence.  In this case a 16 year 4 month sentence to be served at 85% time is disproportionate to the severity of the current offense where at NO TIME did the "victim" state that the Defendant intentionally hurt her.

ECF No. 1 at 9.

---

[5] See People v. Superior Court (Romero), 13 Cal. 4th 497 (1996).  The "three-strikes" law mandates enhanced sentences for defendants with qualifying prior convictions.  Sentencing courts have limited discretion pursuant to Romero to dismiss priors at sentencing, thereby avoiding their enhancing effect.

12

Prior to the sentencing hearing, the defense filed a <u>Romero</u> motion to strike the prior conviction that had been alleged (and admitted) for purposes of California's recidivist sentencing statute. CT 249-261. The defense also submitted a statement in mitigation. CT 262-271. The <u>Romero</u> motion was denied. 2 RT 388. Petitioner was sentenced pursuant to the three-strikes law, as a second striker. CT 300; 2 RT 389-391.

### B. The Clearly Established Federal Law

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle</u>, 502 U.S. at 67-68. "The Supreme Court has "repeatedly held that a state court's interpretation of state law… binds a federal court sitting in habeas corpus." <u>Bradshaw</u>, 546 U.S. at 76.

The U.S. Supreme Court has rejected Eighth Amendment challenges to California's "three strikes" sentencing statute. <u>Ewing v. California</u>, 538 U.S. 11 (2003) ("third strike" life sentence for grand theft not disproportionate in violation of the Eighth Amendment); see also <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003) (denying habeas relief to California inmate sentenced to life imprisonment for petty theft, because sentence not disproportionate under clearly established federal law).

### C. The State Court's Ruling

The California Court of Appeal ruled as follows:

> Finally, defendant contends the trial court abused its discretion in denying his <u>Romero</u> request. We do not find any abuse. The probation report recounted the 30-year-old defendant's criminal history. At 16 years of age, he was adjudged a ward of the court after he possessed cocaine for sale. He was continued a ward at 17 and 18 years of age after he received stolen property and possessed marijuana. At 19 years of age, defendant committed second degree robbery and was granted probation subject to 10 months in county jail. At 25 years of age, he was convicted of first degree burglary and sentenced to prison for four years. When he was 28 years old, defendant was convicted of domestic battery and criminal threats, both misdemeanors, and was granted probation subject to 31 days in jail. The victim of the domestic battery obtained a restraining order, which defendant violated. He was convicted of a misdemeanor for the violation. When defendant was arrested for the current offense, he was on active parole and formal probation.

The probation report also recounted defendant's background. Defendant reported he had been in foster care from six to 12 years of age because his mother could not support him and he was subject to physical and sexual abuse in six to seven different foster homes. When he returned to his mother's care, he blamed the neighborhood in which he lived for his troubles and dropping out of school. Defendant worked part time as a general laborer and attended a local college. He claimed he was doing well on parole. Defendant reported that he took medications for a bipolar disorder. Although he told the probation officer he did not consume alcohol or use controlled substances, the probation officer noted that when he was arrested in the current case, he admitted having consumed alcohol.

Defendant emphasized his background and argued that striking the strike prior was appropriate given his mental health issues and the fact that the current offense was minor, a "trivial drunken argument that went too far—and by too far, [he] mean[t] resulted in a four centimeter cut."

Noting the information in the probation report, the trial court denied defendant's request to strike the strike prior, stating that despite defendant's unfortunate background, "he has had many, many, opportunities to turn his life around" but continued to commit crimes and to violate probation and parole, resulting in a significant record. The court concluded, "The facts and circumstances of his repeated inability to comply with rules of society and his acts of violence do not lend itself to the Court striking the strike." In contending the trial court abused its discretion in denying his Romero request, defendant claims the trial court failed to "adequately" consider his arguments and failed to consider that the "current offense was not severe" and adequately punished by the base term and enhancement, as well as a term for the false imprisonment. He claims his 2008 first degree burglary, which was used as a strike prior and a five-year enhancement, did not involve a confrontation with anyone in the residence. Although he recognizes that the trial court considered his upbringing, he argues that the trial court failed to consider his progress as an adult, in that he was employed, going to school, and had a plan. We reject defendant's contentions.

A sentencing court may strike a strike prior if the defendant falls outside the spirit of the three strikes law. (People v. Williams (1998) 17 Cal.4th 148, 161, 69 Cal. Rptr. 2d 917, 948 P.2d 429.) The court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (Ibid.)

The court's dismissal of a strike prior is a departure from the sentencing norm. We do not reverse the trial court's denial of a Romero request unless the defendant shows the ruling was "so irrational or arbitrary that no reasonable person could agree with it." (People v. Carmony (2004) 33 Cal.4th 367, 377-378, 14 Cal. Rptr.

> 3d 880, 92 P.3d 369.) Where the trial court "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (Id. at p. 378.)
>
> Here, the trial court considered defendant's arguments, having reviewed the probation report, which included defendant's explanation of his background as well as defense counsel's written request to strike the strike prior. As the trial court correctly noted, defendant had had many opportunities but continued his life of crime. As the trial court found, defendant's background, character, and prospects reflect him as someone who has demonstrated a repeated inability to comply with the rules of society. Contrary to defendant's claim that his "current offense was not severe," his current felony offenses were more severe than his most recent misdemeanor offenses of domestic battery, criminal threats, and violation of a restraining order. On the record before us, defendant has failed to demonstrate that the trial court abused its discretion in denying his Romero request.

Lodged Doc. 8 at 9-11.

### D. Objective Unreasonableness Under § 2254(d)

Petitioner's Romero claim presents a question of California law and is, therefore, not cognizable on federal habeas review. See Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) ("[Petitioner] argued that he should be resentenced in light of the California Supreme Court's decision in Romero, . . . which held that judges have discretion not to count prior qualifying offenses as strikes. The district court correctly concluded that this state law claim is not cognizable on federal habeas review.") (internal citations omitted), overruled on other grounds, 538 U.S. 901(2003). Nor can petitioner refashion this state claim into a federal one simply by casting it as a "due process" violation. See Little v. Crawford, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997).

Petitioner has identified no due process precedent of the U.S. Supreme Court that would be implicated by the wrongful denial of a Romero motion,[6] nor is the undersigned aware of any.

---

[6] As the California Court of Appeal explained and as petitioner recognizes, state law makes Romero relief discretionary. Abuses of discretion by a state sentencing court do not violate federal constitutional rights or support habeas relief. See Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).

15

Where there is no governing precedent from the U.S. Supreme Court, there can be no unreasonable application of federal law that might open the door to federal habeas relief under AEDPA. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam).

The petition alleges in conclusory fashion that the error resulted in a sentence that violates the Eighth Amendment's prohibition on cruel and unusual punishment, ECF No. 1 at 9,[7] but no U.S. Supreme Court precedent suggests that a 16-year sentence for felony domestic violence is unconstitutionally disproportionate. To the contrary, the Supreme Court has found life sentences for non-violent offenses to be constitutionally permissible applications of California's recidivist sentencing regime. See Ewing, 538 U.S. 11; Andrade, 538 U.S. 63. Accordingly, it cannot have been unreasonable for the state courts to reject a claim that petitioner's 16 year and 4 month sentence for a violent crime is unconstitutionally disproportionate.

Nor does petitioner's unexplained citation to "Blakely," ECF No. 1 at 9, provide any basis for relief. Blakely v. Washington, 542 U.S. 296 (2004), requires that *facts* necessarily resulting in a longer sentence be found by a jury, not by a judge. Petitioner's sentence was not based on any judge-found facts. All the elements of each count, and all facts related to charged sentencing enhancements on each count, were found by the jury—and the fact that petitioner had sustained the prior burglary conviction was admitted. Blakely is therefore inapposite.

For all these reasons, this claim must be denied.

IV.     Claim Four: Ineffective Assistance of Appellate Counsel

     A.     Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that his appellate counsel provided constitutionally deficient representation. The supporting facts, in their entirety, are these:

---

[7] Respondent contends that any Eighth Amendment claim is barred as unexhausted. ECF No. 21 at 15-16. The undersigned disagrees, because the petition for review on direct appeal asserted that "[t]he punishment under the strike law, as applied in this case, constituted cruel and unusual punishment in violation of the Eighth Amendment." Lodged Doc. 9 at 29. A claim is exhausted when it is fairly presented to the state's highest court, whether or not the state court addresses it. Smith v. Digmon, 434 U.S. 332, 333-34 (1978) (per curiam). In any event, a claim may be denied on the merits whether or not it has been exhausted. Granberry v. Greer, 481 U.S. 129, 135 (1987). Accordingly, the undersigned recommends denial on the merits without a ruling on the exhaustion issue.

> Several times I tried to reach appellate attorney Mathew D. Roberts to try & talk to him in regards to issues I wanted to raise on appeal. One Issue being count four being an error by the court to charge and convict me of a felony sentencing me to prison. He refused to bring it up. I had no earlier opportunities to raise meritorious issues through him & I can say my due process rights were violated due to his incompetence or willful misrepresentation.

ECF No. 1 at 11.

### B. The Clearly Established Federal Law

A criminal defendant enjoys the right to effective assistance of counsel on appeal. Evitts v. Lucey, 469 U.S. 387, 391 (1985). The familiar framework of Strickland v. Washington, 466 U.S. 668 (1984), governs ineffectiveness claims challenging the performance of appellate counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986). To prevail, a petitioner 'must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues for appeal — that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." Smith v. Robbins, 528 U.S. 259, 285 (2000) (internal citation omitted). Petitioner then has the burden of demonstrating that he has suffered prejudice, or "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." Id. (citing Strickland, 466 U.S. at 694).

### C. Discussion

Respondent contends that this claim is unexhausted. Petitioner was previously provided an opportunity to seek a stay for the purpose of exhausting this claim, ECF No. 7, and he declined that opportunity, ECF No. 8. Nonetheless, the undersigned recommends denial of the claim on the merits. See Granberry v. Greer, 481 U.S. 129, 135 (1987) (unexhausted claim may be denied on the merits).

Petitioner cannot establish prejudice under Strickland and Smith v. Robbins, supra. The claim appears to be based on appellate counsel's failure to challenge the felony sentence that was originally imposed on Count Four (possession of tear gas by a felon). However, the Court of Appeal sua sponte identified this error, and remanded for the limited purpose of misdemeanor re-sentencing on Count Four. Lodged Doc. 8 at 12. Accordingly, petitioner cannot show that

////

counsel's failure to raise the issue harmed him. Looking at the matter through another lens, this claim is moot in that petitioner long ago received the only available relief.

### V.      Claim Five: Admission of Hearsay at Preliminary Hearing

#### A.      Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges as follows:

> At the preliminary hearing Aug. 23rd 2013 Citrus Heights police officer Wesley Herman testified to the hearsay statements of percipient witness Monique Singer. Without that hearsay testimony, there was insufficient evidence to hold me to answer to the charged offenses. The officer's testimony should have been stricken from the record pursuant to the defense motion after he admitted that he had less than 5 yrs. experience and was not POST certified. Furthermore the magistrate shouldn't have allowed the officer to leave the stand in the middle of hearsay testimony to go into the hallway to call his supervisor to refresh his recollection.

ECF No. 1 at 13.

#### B.      Discussion

Respondent argues that this claim, which was rejected in habeas by the California Supreme Court, with citation to a state procedural rule,[8] is defaulted. See Johnson v. Lee, 136 S. Ct. 1802, 1807 (2016) (holding that state court application of California's Dixon rule bars federal habeas review). The claim may be easily disposed of on the merits, however, and the court therefore elects to bypass the default issue. See Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982).

The undersigned can identify no cognizable federal claim here. The admission of evidence and management of the courtroom do not present constitutional questions. See Estelle, 502 U.S. at 67. More fundamentally, errors at a preliminary hearing cannot support federal habeas relief because they do not affect the constitutionality of the conviction. At most, defects at a preliminary hearing affect the validity of the probable cause determination. A probable cause determination, however, is not a constitutional prerequisite to a charging decision. Gerstein v. Pugh, 420 U.S. 103, 125 n.26 (1975); see also Howard v. Cupp, 747 F.2d 510, 510 (9th Cir.

---

[8] Lodged Doc. 19 (citing In re Dixon, 41 Cal.2d 756, 759 (1953)).

1984) (well settled that there is no fundamental right to a preliminary hearing), cert. denied, 471 U.S. 1021 (1985).  Accordingly, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause, Gerstein, 420 U.S. at 119, or on the ground that the probable cause determination was faulty, Viltz v. McEwen, 2013 U.S. Dist. LEXIS 153714 at *38-39 (S.D. Cal. 2013) (collecting cases).  Issues pertaining to the sufficiency, credibility, and admissibility of testimony at a preliminary hearing simply provide no basis for habeas relief, even without reference o AEDPA standards.  See Gilmore v. California, 364 F.2d 916, 918 n. 5 (9th Cir. 1966).  In short, once a jury returns a guilty verdict, the validity of the conviction turns on the constitutionality of the trial—any errors at the preliminary hearing are moot.  This claim must be denied.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights.  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file

////

////

////

////

1 | objections within the specified time may waive the right to appeal the District Court's order.
2 | Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: July 1, 2020

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE